UNITED STATES

v.

**Staff Sergeant Lyndon M. VAUGHTERS, FR200–50–5209 United States Air Force.**

No. ACM 30799.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 9 June 1993.

Decided 26 April 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Captain Eric N. Eklund, Captain Joel R. Reifman, and Captain Michael L. McIntyre.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Major Barnard N. Madsen.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

The main issue raised in this appeal is how the rule in *Edwards v. Arizona* applies to police-initiated interrogation of a suspect who has not been held in continuous custody between assertion of his right to counsel and the subsequent interrogation.

A military judge convicted appellant of wrongfully using cocaine (Article 112a, UCMJ, 10 U.S.C. § 912a) and sentenced him to a bad-conduct discharge, confinement for 6 months, forfeiture of $300 pay per month for 8 months, and reduction to E–1. Appellant assigns two errors, and this Court specified a third: (1) whether appellant was denied his right to counsel by being interrogated after invoking that right; (2) whether appellant's confession was coerced; and (3) whether appellant's trial defense counsel provided ineffective assistance. Finding no error, we affirm.

### I. Appellant's Confession

#### A. Facts

At trial, the parties stipulated to facts surrounding appellant's confession. On 10 February 1993, Security Police investigators interviewed appellant about his involvement with illegal drugs. When the investigators expressed doubts about appellant's story, appellant requested counsel, but agreed to provide a urine specimen for testing. The interview was terminated and appellant provided the specimen. The urine specimen tested positive for the presence of a metabolite of cocaine. The results of the urinalysis were reported back to the Air Force Office of Special Investigations (AFOSI), rather than the Security Police. Agents of the AFOSI called appellant to their office on 1 March 1993 for an interview. They were unaware that, and apparently did not ask if, appellant had previously invoked his right to counsel. The AFOSI agents advised appellant of his rights to remain silent and to have an attorney. Appellant waived these rights in writing and agreed to be interviewed. Appellant then admitted snorting two lines of cocaine while at a local night club.

#### B. Right to Counsel

The Supreme Court has established a bright-line rule for police officers to follow:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386–87 (1981), *reh. denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). The *Edwards* rule prohibits police-initiated custodial interrogation until an attorney is *present,* not just until the suspect has had an opportunity to consult with an attorney. *Minnick v. Mississippi,* 498 U.S. 146, 151–52, 111 S.Ct. 486, 490, 112 L.Ed.2d 489, 496–97 (1990) (citing *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 723–24 (1966), *reh. denied,* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966). Although the Supreme Court has reserved judgment on whether the Fifth Amendment and the *Mi-*

*randa/Edwards* line of cases apply to the military, *Davis v. United States,* —— U.S. ——, —— n. *, 114 S.Ct. 2350, 2357 n. *, 129 L.Ed.2d 362, 374 n. * (1994), the President and the military appellate courts have so applied them. *See* R.C.M. 304 and 305; *United States v. Reeves,* 20 M.J. 234 (C.M.A. 1985) (applying *Edwards* ); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249, 1967 WL 4235 (1967) (applying *Miranda* ).

█ By its very terms, *Edwards* is limited to custodial interrogations. In the military, interrogation of a suspect must be preceded by a warning containing the nature of the accusation, the right to remain silent, and that any statement made may be used as evidence in a trial by court-martial. Mil. R.Evid. 305(c). Only if the suspect is in custody, must he also be advised of his right to counsel. Mil.R.Evid. 305(d). As law enforcement officials notified appellant of his right to counsel on both occasions, and neither party presented evidence on the issue of custody, we will assume that appellant was in custody during each of the interrogations. It is undisputed that the AFOSI agents initiated the second interrogation of appellant after he had invoked his right to counsel.

█ The Supreme Court seems to have established two standards for appellate courts to apply when reviewing the trial court's ruling on the admissibility of a confession. If the accused claims his mental condition prevented him from freely, knowingly, and intelligently waiving his rights, then admissibility is a matter of the rules of evidence, and appellate courts apply an abuse of discretion standard. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). However, a due process issue requires *de novo* review.

[T]he ultimate issue of "voluntariness" is a legal question requiring independent federal determination.... That duty ... is not limited to instances in which the claim is that the police conduct was "inherently coercive." It applies equally when the interrogation techniques were improper only because, in the particular circumstances of the case, the confession is unlikely to have been the product of a free and rational will.

*Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405, 411 (1985) (citations omitted). The Supreme Court has not promulgated a standard for reviewing allegations of technical violations of the *Edwards* rule; however, the absence of an expression of such a standard suggests that the Supreme Court reviews such issues *de novo.* Regardless, we will apply the *de novo* standard. Although not required to do so under Article 66(c), UCMJ, in applying either standard we normally will defer to the military judge's findings of fact unless they are clearly erroneous. *United States v. French,* 38 M.J. 420, 424–25 (C.M.A.1993); *United States v. Washington,* 42 M.J. 547 (A.F.Ct. Crim.App.1995).

The rule in *Edwards* was clearly designed to implement the Supreme Court's desire to protect an accused from the " 'inherently compelling pressures' of custodial interrogation." *Arizona v. Roberson,* 486 U.S. 675, 681, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704, 713 (1988) (quoting *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 719–20 (1966)). The Court was concerned that an accused in police custody, "having expressed his own view that he is not competent to deal with the authorities without legal advice," would be badgered by police officers into eventually giving up that right without counsel's presence. *Roberson,* 486 U.S. at 681, 108 S.Ct. at 2098, 100 L.Ed.2d at 713 (quoting *Michigan v. Mosley,* 423 U.S. 96, 110 n. 2, 96 S.Ct. 321, 329 n. 2, 46 L.Ed.2d 313, 325 n. 2 (1975)); *Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293, 302 (1990); *see Oregon v. Bradshaw,* 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 411–12 (1983).

█ Although the sweeping language in *Edwards* would seem to apply to this case, we believe such a result is neither required nor would further the purpose of the rule. Appellant was released from custody immediately after he requested to speak to an attorney. For the next 19 days, appellant was neither in custody nor subject to any other conditions on his liberty, was not badgered by police, was performing duties on an Air Force installation on which two military de-

fense attorneys were located, had sought legal counsel from a military defense counsel for a previous nonjudicial punishment, and did not contact any attorney for assistance with this accusation. We do not believe the Supreme Court meant to find an accused in appellant's position to be under such "inherently compelling pressures" as to need any special protection. We find the AFOSI-initiated interrogation of 1 March 1993 did not violate appellant's right to counsel. *See McNeil v. Wisconsin,* 501 U.S. 171, 176–77, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 167–68 (1991) (suggesting the rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) applies when there has been no break in custody); *United States v. Flynn,* 34 M.J. 1183, 1187–88 (A.F.C.M.R. 1992).

### C. Coerced Confession

■ Appellant also asserts that the AFOSI agents coerced his confession by threatening to tell his neighbors, supposedly drug dealers, that appellant had informed on them. Appellant made no such assertion at trial. In fact, the military judge made a finding, supported by the record, that there was "no suggestions that the admissions were involuntarily obtained by coercive means."

Appellant has a duty to frame his motions with "substantial clarity and specificity." *United States v. Corraine,* 31 M.J. 102, 107 (C.M.A.1990). His motion to suppress did not raise the coercion issue. Therefore, appellant forfeited ("waived") this issue. *Corraine;* Mil.R.Evid. 103(a), 304(e); R.C.M. 905(e).

### II. Ineffective Assistance of Counsel

At trial, after the military judge denied the motion to suppress the confession, appellant entered a plea of not guilty. He stipulated that: the urine specimen he had provided the Security Police had been tested and found to contain a metabolite of cocaine; and the reason for his positive urinalysis was that he had used cocaine. The military judge conducted a *United States v. Bertelson,* 3 M.J. 314 (C.M.A.1977), inquiry and received assurances appellant understood the meaning and effect of such a stipulation and wanted to be bound by it. Thereafter, trial defense counsel presented neither evidence nor argument to the court on findings. In his clemency submissions, appellant maintained his innocence of the charge. We specified whether trial defense counsel failed to provide effective assistance to appellant.

In response to the specified issue, appellant's appellate counsel have notified this Court that, despite their diligent efforts, they have been unable to locate appellant. They further claim that, since appellant refused to discuss the facts of his case in his clemency submissions, he has not waived his attorney-client relationship, and counsel for the United States should not be permitted to discuss the matter with appellant's trial defense counsel. Nevertheless, appellate defense counsel assert that there is no reasonable tactical basis for the trial defense counsel's decision not to at least argue after his client has pled not guilty. Based on the unavailability of appellant, counsel for the United States ask that we either withdraw the specified issue or advise them whether the specified issue is sufficient to authorize release of attorney-client information from trial defense counsel.

We decline to either withdraw the specified issue or to find that appellant has waived his attorney-client relationship. Under Article 66(c), UCMJ, this Court may affirm only such findings as are correct in law and fact. We believe this mandate requires us to raise, on our own, issues which might affect such findings. By specifying the issue of the effectiveness of counsel, we did not mean to imply that we found such deficiencies in counsel's performance as to overcome the presumption of competency, but merely that we were interested in appellate counsels' views. Once we specify an issue of ineffectiveness of counsel, appellant still has the burden of establishing its existence.

■ "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). To sustain an allegation of ineffective assis-

tance of counsel, *appellant* has the burden of showing that counsel's performance was deficient and the deficient performance prejudiced the defense. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (1984); *United States v. Scott,* 24 M.J. 186, 188 (C.M.A.1987).

■ Appellant has not met his burden on either prong of the *Strickland* test. Without appellant's version of the events, we are not convinced appellant has overcome the presumption that his counsel's actions "might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Based on the record, it appears appellant's only viable defense was to win the motion to suppress. Having lost the motion to suppress, it might be sound strategy to mitigate the sentence by stipulating to the facts and, in effect, pleading guilty, without waiving the motion to suppress. Under those circumstances, we are unwilling to second-guess trial defense counsel's tactics. *United States v. Holt,* 33 M.J. 400, 411 (C.M.A.1991); *United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977).

The findings and sentence are correct in law and fact, and we find no errors prejudicial to appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON and Judge BECKER concur.